UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Donald R. Visser, Donovan J. Visser,
and Visser and Associates, PLLC,    No.:
                                     Hon. Hala Y. Jarbou
       Petitioners.

_____/

## Brief in Support

### Introduction

Following a show cause hearing, Petitioners Donald R. Visser, Donovan J. Visser and Visser and Associates, PLLC (collectively the "Vissers"), were reprimanded by the Honorable Paul L. Maloney for violating Michigan Rule of Professional Conduct 4.2(a). This rule provides, in pertinent part, that "in representing a client, a lawyer shall not communicate about the subject of the representation with a person whom the lawyer knows to be represented in the matter by another lawyer…"

The Rule 4.2(a) violation was based on solicitation letters sent by the Vissers which were received by four plaintiffs named in the class action entitled *Wayside Church, et al, v Van Buren County, et al*, No. 1:14-cv-1274, over which Judge Maloney is presiding. *Wayside Church* involves claims for the unlawful takings that occurred when counties retained the surplus value of properties which were foreclosed for the nonpayment of property taxes.

A copy of the order of reprimand, which was entered by the Court on May 15, 2023 is attached to the Petition as **Exhibit 1**.

The instant proceeding is brought pursuant to W.D. Mich. L Gen R 2.3(d) which provides that "[upon] the entry of an order for discipline, the attorney may seek review from the Chief Judge

of the order for discipline." Petitioners seek review on two grounds. First, that the Court misconstrued the *mens rea* element of Rule 4.2(a). Second, that Rule 4.2(a) is unconstitutional as applied to the conduct of the Vissers.

**Background**

Donald R. Visser was licensed as a Michigan lawyer in 1977. His son, Donovan J. Visser was licensed as a Michigan lawyer in 2007. They practice law together under the firm name of Visser and Associates, PLLC. Prior to this matter, both lawyers enjoyed an unblemished disciplinary record.

Between December 2022 and March 2023, the Vissers mailed approximately 6,000 solicitation letters to people who had a potential claim to the surplus proceeds at issue in *Wayside Church*. Before any batch of letters was mailed, the list of proposed addressees was manually cross-checked with the list of named plaintiffs. The work was performed by nonlawyer assistants who are experienced in data gathering and spreadsheet software programs, all under the supervision of the Vissers. Further details of that mailing process are set out in the declaration previously filed by Donovan J. Visser (ECF 270).

Each time the Vissers mailed a batch of solicitation letters, they did so based on the best available data gathered from multiple sources as to the identity of putative class members, and with the expectation that no letter would be sent to a named plaintiff. The first time they learned about a problem with their mailing process was on March 29, 2023, when class counsel in *Wayside Church* filed an emergency motion for a protective order based on six separate letters which ended up in the hands of four named plaintiffs. (ECF 245) Copies of these letters are attached as Exhibits 2, 3, 4, 5, 6 and 7.

Exhibit 2 is the letter sent to "Estate of Henderson Hodgens Jr., c/o Jamesetta Hodgens."

Exhibit 3 is the letter sent to "Estate of Charles R. Waite, c/o Penny Justice."

Exhibit 4 is the letter sent to "Estate of Charles R. Waite, c/o Carl Waite."

Exhibit 5 is the letter sent to "Dennis W & Brandy L. Martin."

Exhibit 6 is the letter sent to "Estate of Frances Covell, c/o Royce D. Covell."

Exhibit 7 is the letter sent to "Estate of Frances Covell, c/o Richard G. Covell, Jr."

Following the hearing on class counsel's emergency motion, the Vissers were ordered to show cause why the Court should not enter an order sanctioning them for their conduct. (ECF 251)

**<u>Show Cause Hearing</u>**

At the show cause hearing held on May 8, 2023, class counsel for *Wayside Church* was permitted, over the objection of counsel for the Vissers, to provide the Court with three additional solicitation letters that had been received by other people who were named plaintiffs in *Wayside Church*. Counsel's objection to the additional letters was based on *In re Ruffalo*, 390 US 544, 88 S Ct 1222, 20 L Ed 2d 117 (1968), which held that a lawyer who is accused of professional misconduct is entitled to procedural due process, such as fair notice of the charge.

In the order to show cause – which in this case functions as the charging document – the only letters referenced were the six letters attached as Exhibits 2 – 7. The Vissers had no notice that the hearing would include other letters. The due process concerns created by those additional letters are alluded to in footnotes 4 and 7 of the opinion, where the Court says it "would still find that the Vissers violated Rule 4.2(a) even if class counsel had not provided three solicitation letters not contained in the emergency motion for a protective order."

Given the Court's assurances, it would be difficult to say whether those additional letters influenced the decision. However, there was a second way in which the Vissers were denied

procedural due process, namely, by the Court's reliance on allegations of misconduct that were made against the Vissers in a different class action filed in the Eastern District of Michigan entitled *Fox v Saginaw County*, No. 1:19-cv-11887-TLL-PTM.

The order to show cause did not give fair notice to the Vissers that their conduct in *Fox* would come under scrutiny at the hearing. This is especially concerning because, unlike the additional letters, the *Fox* allegations plainly influenced the Court. Despite conceding that the allegations in *Fox* did not implicate Rule 4.2(a), the Court found *Fox* to be "of particular importance" (p. 2), and to be "relevant for the purpose of determining the Vissers' state of mind in sending the solicitation letters." (p. 11). In any event, the review of this matter should disregard the additional letters and the allegations involving *Fox*.

**<u>Argument</u>**

I. The Court misconstrued the *mens rea* element of Rule 4.2(a).

In the order to show cause, it is asserted that "Visser had a duty to comply with Rule 4.2(a) by **ensuring** that its solicitation letters were not sent to any of the plaintiffs listed in the operative complaint." The notion that a lawyer who sends out solicitation letters acts as a guarantor of the identity of the addressees essentially turns Rule 4.2(a) into a *per se* ethical offense. It is an analytical approach which forecloses the possibility of human error and imposes strict liability.

Except for offenses involving misappropriation and financial record keeping, strict liability is a concept that has no place in the imposition of attorney discipline. "As with criminal offenses, disciplinary offenses are defined in terms of a particular mental state of a lawyer-actor…Most disciplinary offenses involve acts that, in themselves, reflect a concern with moral blameworthiness and thus require that the lawyer's conduct be knowing." Restatement Third, The Law Governing Lawyers § 5.

The state of mind element required for a violation of Rule 4.2(a) is that of actual knowledge. The Vissers unequivocally deny that they knowingly communicated with any represented person in *Wayside Church*. Of course, the definition of "knows" in MRPC 1.0 permits an inference of actual knowledge to be made from circumstances and this is what the Court says it did when it concluded that "choosing to ignore numerous solicitations of named plaintiffs constitutes actual knowledge based on the circumstances." (p. 10)

However, the Vissers did not "ignore" anything. As soon as they were alerted by class counsel's emergency motion that certain named plaintiffs had received solicitation letters, the Vissers immediately halted further mailings to people whom they had not previously been in contact with. The Court said it was "troubled" by the fact that Donald Visser "blamed his staff for their failure to filter out named plaintiffs." (p. 9) The Vissers did not blame their staff; they were simply attempting, with the benefit of hindsight, to explain how these letters were overlooked and how they corrected the process.

Inferring the actual knowledge required by Rule 4.2(a) from circumstances is at best a slippery business. "Actual knowledge" and "reasonably should have known" are supposedly distinct concepts according to MRPC 1.0, but the distinction is not at all clear. Given the near identity of the two terms, it is impossible to know with any reasonable degree of certainty whether the fact finder properly applied the rule.

Take, for example, when the Court opines that the Vissers, following their experience in *Fox*, "should have been well-versed in class action procedures and the proper method to communicate with class members." (p.11) That may be true, but for purposes of discipline what a lawyer "reasonably should know" is a state of mind that is entirely different from the "actual knowledge" demanded by Rule 4.2(a). The circumstances in this matter do not support finding, as

5

the Court did, that the Vissers' conduct "crosses the line from inadvertence to willful ignorance." (p. 10).

II. Rule 4.2(a) is unconstitutional as applied to the conduct of the Vissers.

When one examines the origin of Rule 4.2(a), it becomes apparent why its jurisdictional reach should not encompass solicitation letters. The so called no-contact rule can be traced back to the 1836 publication of Professor Hoffman's Fifty Resolutions, which is considered to be the earliest record of guidelines for attorney conduct in the United States. Resolution XLIII provided that "I will never enter into any conversation with my opponent's client relative to his claim or defense, except with the consent and in the presence of his counsel." In similar fashion, when the Alabama State Bar Association promulgated its Code of Ethics in 1887, item 45 was captioned "No Discussion of Merits of Cause with Opposite Party" and provided that "An attorney ought not to engage in discussion or arguments about the merits of the case with the opposite party, without notice to his attorney."

The American Bar Association adopted their Canons of Professional Ethics in 1908. Canon 9, which was captioned "Negotiations with Opposite Party," provided in pertinent part that "A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel." The Canons were superseded in 1969 with the adoption of the ABA Model Code of Professional Responsibility.

The immediate predecessor of Rule 4.2(a) is Disciplinary Rule 7-104 of the Model Code of Professional Responsibility. Dr 7-104 is captioned "Communicating with One of Adverse Interest" and provides in pertinent part that "During the course of his representation of a client a lawyer shall not: Communicate or cause another to communicate on the subject of a representation

with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing the other party or is authorized by law to do so."

From 1836 onward, the underlying assumption of the no-contact rule has been that the offending lawyer is communicating with an adversary. This is not the case with the Vissers. The recipients of the solicitation letters are not adversaries of the Vissers, so Rule 4.2(a) should not be applicable.

Rule 4.2(a) is also inherently vague because there is no ascertainable standard for distinguishing what a lawyer "knows" from what a lawyer "reasonably should know." Formal opinions of the American Bar Association recognize that the two terms are different, and that the element of actual knowledge involves no duty of inquiry by the lawyer. However, the only guidance they offer is that a lawyer "may not close his eyes to the obvious." ABA Formal Op. 95-396 (1995); ABA Formal Op. 15-472 (2015).

In a similarly unhelpful vein, the Oklahoma Supreme Court, in *Oklahoma Bar Association v Harper*, 995 P 2d 1143 (2000), observed, without further elucidation, that "ascribing actual knowledge to a lawyer based on the facts is not the same as applying [Rule 4.2(a)] under circumstances where the lawyer should have known." *Id.* at 1147. Applying Rule 4.2(a) presents the fact finder with a definitional conundrum, especially when the contact with the represented person occurs by letter, and not in person or by phone.

"It is a basic principle of due process," according *to Grayned v City of Rockford*, 408 US 104, 108-09, 92 S Ct 2294, 33 L Ed 2d 222(1972), that "laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of

arbitrary and discriminatory application." Accord, *Chambers v Stengel*, 256 F 3d 397 (CA 6, 2001).

Take, for example, the Court's determination that the Vissers' solicitation letters "could certainly undermine the solicited individual's confidence in class counsel and the settlement agreement." (p. 11) Those same letters were previously determined by the Court not to be misleading, i.e., to be truthful. Not only does the Court's determination implicitly assume that the solicited individual's confidence in class counsel is justified, it makes no attempt to explain how that confidence could be undermined by a truthful letter.

Every case relied on by the Court involved direct contact of a coercive nature by the lawyer. The lawyer in *Scott v Chipotle Mexican Grill*, *Inc,* No. 12-CV-0833 (ALC)(SN), 2014 WL 4852063 (SDNY, Sept. 29, 2014), personally interviewed a represented person. The lawyer in *In re Searer*, 950 F Supp 811 (W.D. Mich, 1996), personally met with a criminal defendant. The assistant prosecuting attorney in *People v Green,* 405 Mich 273 (1979), personally met with a suspect in jail. These cases provide no useful guidance when the matter does not involve the coercion of face-to-face communication. It misses the mark to treat the conduct of the Vissers as if it was comparable to conduct of the lawyers in *Scott*, *In re Searer* or *Green*.

"In assessing the potential for overreaching and undue influence, the mode of communication makes all the difference." *Shapero v Kentucky Bar Association*, 486 US 466, 108 S Ct 1916, 100 L Ed 2d 475 (1988). Even though the Court found that the Vissers' solicitation letters "…do not cross the line from permissible solicitation to misleading, improper communication with potential class members," the Court's opinion never considers the possibility that such letters may fall outside the scope of Rule 4.2(a).

Contact by counsel with putative class members prior to class certification is entitled to the protection of the First Amendment. *Gulf Oil Co v Bernard*, 452 US 89, 101 S Ct 2193, 68 L Ed 2d 693 (1981); ABA Formal Op. 07-445 (2007). Because Rule 4.2(a) amounts to "a court-imposed restriction on free speech," the State Bar of Michigan concluded that the scope of the rule "must be narrowly construed in fulfilling its original goals." Ethics Opinion RI-219.

The commonly understood goals of Rule 4.2(a) are: (1) to prevent an attorney from circumventing opposing counsel to obtain statements from the adversary; (2) to preserve the integrity of the attorney-client relationship; (3) to prevent the inadvertent disclosure of privileged information; and (4) to facilitate settlement by involving lawyers in the negotiation process. *Smith v Kalamazoo Ophthalmology*, 322 F Supp 2d 883 (WD Mich, 2004). None of the interests protected by the rule were endangered by the conduct of the Vissers.

It is hard to imagine a less intrusive form of communication than the solicitation letters sent by the Vissers. As the United States Supreme Court noted in *Shapero*, a solicitation letter "can readily be put in a drawer to be considered later, ignored or discarded." 486 US at 476. The letters sent by the Vissers advised the recipient that "If you have already hired an attorney to address this issue, please disregard this letter."

Nobody who received a letter from the Vissers could conceivably be considered their adversary. The letters did not seek to obtain statements or disclosure of privileged information from the recipients. There was never any credible threat to an existing attorney-client relationship or to the settlement negotiations in *Wayside Church.*

According to the drafters, the Rules of Professional Conduct are "rules of reason" and "presuppose that the disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition

of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation."
MRPC 1.0 ("Scope"). Less punitive measures were available to the Court under Federal Rule of Civil Procedure 23 to manage the proceedings in *Wayside Church*; it was unreasonable to invoke the quasi-criminal process of attorney discipline. An imperfect exercise of a constitutional right should not be elevated into professional misconduct.

**Relief Requested**

Petitioners request that the Court conduct a *de novo* review of this matter; that the Formal Order of Reprimand be vacated; and that the Order to Show Cause be dismissed.

Respectfully submitted,

**SULLIVAN, WARD, PATTON, GLEESON & FELTY, P.C.**

*/s/Robert E. Edick*
Robert E. Edick (P25432)
Attorney for Petitioners
400 Galleria Officentre, Ste. 500
Southfield, MI 48034
(248) 746-0700
redick@sullivanwardlaw.com

Dated: May 30, 2023

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2023, I caused to be electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

/s/*Robert E. Edick*
Robert E. Edick (P25432)
Attorney for Petitioners
400 Galleria Officentre, Ste. 500
Southfield, MI  48034
(248) 746-0700
Redick@sullivanwardlaw.com

W2638873.DOCX